IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FARMA-TEK ILAC SAN. VE TIC LTD. STI | : : : | CIVIL ACTION |
| v. | : : | |
| DERMIK LABORATORIES, SANOFI-AVENTIS LLC USA, SANOFI-AVENTIS U.S. INC. | : : : | NO. 09-3705 |

## MEMORANDUM

Ludwig, J.                                                                                      March 31, 2011

Defendants Dermik Laboratories, *et al.* move to dismiss this action because of *forum non conveniens*. Fed. R. Civ. P. 12(b)(3). The motion will be granted subject to conditions set out in the accompanying order. Defendants' motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), will be denied as moot. Jurisdiction is diversity. 28 U.S.C. § 1332.

This action involves a dispute as to the right to register, market, and sell in Turkey two pharmaceutical products owned and manufactured in Canada by defendant Dermik Laboratories – Benzamycin® and BenzaClin®. Plaintiff Farma-Tek İlaç Sanayi Ve Tic Ltd. Şti is a citizen of the Republic of Turkey. The complaint filed August 13, 2009, as amended January 4, 2010, alleges breach of contract, promissory estoppel, unjust enrichment, and tortious interference with plaintiff's existing and prospective contracts in Turkey. It asks for a declaration of plaintiff's right to distribute the products in Turkey.

Farma-Tek's operations are entirely within Turkey. Sanofi-aventis U.S. LLC, a Delaware company, and sanofi-aventis U.S. Inc., a Delaware corporation, each has its

1

principal place of business in Bridgewater, New Jersey. In January 2006, Dermik's assets were transferred to sanofi-aventis U.S. LLC, which manages the marketing and sale of both products from that location.

In 1997, Farma-Tek and Dermik entered into a "Distribution Agreement" that granted Farma-Tek exclusive rights to market, distribute, and sell Benzamycin® in Turkey for a five-year term ending December 25, 2002.[1] The Agreement states that it "will be construed in accordance with the law of the United States and . . . Pennsylvania" and "may not be altered or modified, nor may any term be waived in whole or in part, except in writing signed by duly authorized representatives of the parties."[2]

According to Farma-Tek, the Agreement was modified by the parties' course of conduct and by oral promises given by Dermik that Farma-Tek would be the exclusive distributor of Benzamycin® and BenzaClin® in Turkey. Farma-Tek relies on two certificates of authority and a power of attorney signed by Dermik and filed by Farma-Tek with the Turkish Ministry of Health in 2002 and 2007. These documents certify plaintiff's rights to register Benzamycin® and BenzaClin® and authorize "[Farma-Tek] to represent Dermik Laboratories vis-á-vis the Health Authority in Turkey with respect to all registration, marketing authorization and licensing . . . related procedures."[3] Farma-Tek asserts that under

---

[1] The agreement was renewable for successive one-year terms upon the instance of either party. This option was not exercised.

[2] Distrib. Agreement, Arts. 14.6, 14.8, 14.9, Defs. br., ex. 1, doc. no. 7-1.

[3] Certificates of authority dated August 15, 2002 and power of attorney dated July 15, 2007, Pl. br., ex. A, doc. no. 11-1.

2

the Turkish Ministry of Health's regulations relating to medicinal products and standard business practices, the documents evidence the parties' intent to modify the Agreement. In Farma-Tek's view, the documents expanded the scope of its distribution rights to include both products and also renewed the term of distribution for two successive five-year periods to July 15, 2012.[4]

Defendants' response: Under the documents, plaintiff had no right or authority to distribute BenzaClin®. Moreover, after the Agreement ended on December 25, 2002, defendants considered it to be terminable at will. By letter of June 8, 2009, Dermik notified Farma-Tek that their business relationship would terminate effective December 31, 2009. As a result, plaintiff became contractually obligated to return the licenses and permits issued by the Ministry of Health for distribution of Benzamycin® and BenzaClin®. Plaintiff refuses to return them.

On May 10, 2010, defendants sued Farma-Tek in the Kadikoy 4th Commercial Court of First Instance in Istanbul, where Farma-Tek's principal office is located, to obtain an order that their Agreement was terminated and directing Farma-Tek to return the licenses and permits to Dermik.[5] Under Turkish law, the Ministry of Health appears to require an order from a Turkish court before record ownership of a product may be transferred.[6]

---

[4] Şahin Decl. ¶¶ 8-14, Pl. br., ex. 1, doc. no. 11-1.

[5] Sait Decl. ¶ 6, Defs. reply br., ex. 1, doc. no. 13-2. Also: in a telephone conference on March 24, 2011, defendants' counsel predicted that the action will be concluded within the next 6 to 12 months. In his opinion, it will resolve the same issues as are before this court.

[6] Defs. reply br. at 3 n.4, 4, doc. no. 13-2; Sait Decl. ¶¶18, 17-25, Defs. br., ex. 2, doc. no. 8-1; Şahin Decl. ¶¶ 11, 13-14, Pl. br., ex. 1, doc. no. 11-1; Turkish Ministry of Health Regulations, Art. 25, Change of Registration Holder, Pl. br., ex. C, doc. no. 11-1.

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) and Gulph Oil Corp. v. Gilbert, 330 U.S. 501 (1947) set forth the law of *forum non conveniens*. Accord: Windt v. Qwest Commc'n Int'l, Inc., 529 F.3d 183, 189 (3d Cir. 2008). Although "a plaintiff's choice of forum should rarely be disturbed," Reyno, 454 U.S. at 241, a court "may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Gilbert, 330 U.S. at 507. When a foreign plaintiff selects a forum other than its home, the strong presumption in favor of plaintiff's choice loses much force. "'Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.'" Windt, 529 F.3d at 190 (quoting Reyno, 454 U.S. at 255-56).

In evaluating a *forum non conveniens* motion, a balancing of the following private and public interest factors is prescribed:

> [T]he private interests of the litigants include . . . relative ease of access to sources of proof; availability of compulsory process for attendance of . . . witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.
>
> Factors of public interest also have place in applying the doctrine [of *forum non conveniens*]. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. . . . There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

Gilbert, 330 U.S. at 508-09; accord: Windt, 529 F.3d at 189.

Turkey's court system constitutes a fully adequate forum. Plaintiff's opposition does not suggest otherwise. There are no service of process issues in Turkey, and defendants have submitted to the jurisdiction of the Turkish courts.

Farma-Tek objects that Turkey does not recognize causes of action or remedies for promissory estoppel and unjust enrichment. Even so, the "possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight," unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all . . . ." Reyno, 454 U.S. at 247, 254. That Turkey recognizes and would provide a remedy for the core subject matter of this basic contract action is undisputed. Turkey's courts appear to apply the law of foreign jurisdictions to contracts, allow for discovery, and afford expeditious advocacy proceedings before an independent judiciary.[7] Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1351, 1352 n.5 (1992), cert. denied, 508 U.S. 912 (1993) is a parallel authority. There, the Court of Appeals for the First Circuit held a Turkish court to be adequate to decide an action involving breach of contract, interference with contractual relations, and government permits to transact business in Turkey.

The circumstances of this action do not call for special deference to plaintiff's choice of forum. Farma-Tek has not demonstrated contacts with this district or operations in the United States. Moreover, plaintiff offers little evidence to show that its choice of forum was made for reasons of convenience. See Gilbert, 330 U.S. at 507 ("A plaintiff sometimes is

---

[7] Sait Decl. ¶¶ 7-13, Defs. br. at 14-15, ex. 1, doc. nos. 8, 8-1.

under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.").

Plaintiff's bases for recovery are rooted in Turkey and in the parties' relationship and events that transpired there. Much of the evidence and most of the witnesses needed by plaintiff to establish its theories of liability are located in Turkey.

If litigation were to proceed in this district, it is evident that defendants would be encumbered with costly and time-consuming difficulties. Witnesses and documents as well as evidence of transactional and business culture of Turkey are almost entirely concentrated in that country. Obstacles to compulsory process over third-party witnesses and related documentary evidence could present a serious tactical problem. See Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 526-27 (S.D.N.Y. 2006) (even if non-party testimony could be could be obtained in Turkey under the Hague Evidence Convention, the delay, costs, and hardships warranted dismissal), aff'd, 343 F. App'x 623 (2d Cir. 2009). Here, the expenses and complexity of such production and examination would subject defendants to "oppressiveness and vexation . . . out of all proportion to plaintiff's convenience." Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947). On the other hand, defendants have agreed to produce in Turkey witnesses and documents within their control in Pennsylvania.

If a judgment is rendered in plaintiff's favor by a Turkish court, there is little doubt that plaintiff would be able to enforce it in the United States. See Restatement (Second) of Conflict of Laws § 98 (1971) (valid judgment rendered in a foreign nation after a fair trial

in a contested proceeding will be recognized in the United States in so far as the immediate parties and the underlying cause of action are concerned).

In addition to these private interests, Turkey has a strong public interest in deciding a dispute about the distribution of these pharmaceuticals products. In contrast, with much less public involvement at stake, this district would be required to undertake the burdens of a jury trial and jury service. Farma-Tek's claims would also entail conflicts of law as well as issues presented by Turkey's laws, regulations, and commercial customs. Moreover, it is unlikely that a decision here would end litigation as to ownership of the licenses and permits and related questions. An order from a Turkish court may prove to be necessary in any eventuality.

Consideration of private and public interests decidedly looks to a Turkish forum. The doctrine of *forum non conveniens* presupposes an alternative forum. Defendants' motion will be granted subject to conditions intended to assure plaintiff an opportunity to proceed with this action in Turkey.

BY THE COURT:

 /s/ Edmund V. Ludwig 
Edmund V. Ludwig, J.